Belknap, }
Dec. 5, 1911. }

### Douglass *v*. Belknap Springs Land Co. & a.

Where house-lots are conveyed by reference to a recorded plan which shows the subdivisions of a tract of land with appropriate streets, the original grantor and his successors in title are estopped to deny the existence of the ways so far only as the same are material to grantees who purchased in reliance upon the plan; and whether an interference with a proposed street injuriously affects the owner of an individual lot is a question of fact to be determined in the superior court.

In a deed of land, the marginal line of a lake constitutes a definite boundary which takes precedence of mere courses and distances.

Where a plan of land laid out for a summer colony shows an avenue following the shore of a lake, the right of an abutting lot-owner to an unincumbered way is not affected by the fact that it can be used only for a foot-path, nor by a mistake in the plan as to the quantity of land lying between the lake and an interior point.

Bill in Equity, to enjoin the incumbrance of the streets shown upon a plan of lands in Alton. Trial by the court. Transferred from the November term, 1910, of the superior court by *Pike*, J.

In 1889, the Winnipesaukee Land Company owned a tract of land on the lake shore in Alton and made a plan of the same, dividing it into house-lots with appropriate streets, including one following the shore line the entire length of the tract and called Lake Shore avenue. The company caused the plan to be recorded in the registry of deeds and sold some lots by reference to it, several of which are now owned by the plaintiff. In a short time the unsold balance of the land was taken on execution; and in 1897 that part of the land so taken lying north of the railroad and bordering on the lake was owned by the defendants William H. and Louis D. Russell, and that part lying south of the railroad by the defendant company.

The purchasers of certain lots on Lake Shore avenue have erected buildings across the avenue. There was a mistake in the survey, and in one place there is some 200 feet less width of land than is shown on the plan. Some lots sold, which are shown on the plan as inside ones, in fact border on the shore or the avenue, and buildings extending to and over the water have been erected on these lots. All the building before mentioned has been done with the knowledge of the plaintiff, who made no objection until this proceeding was begun. As to these, he now concedes he is estopped to

claim the way. Lake Shore avenue has never been wrought. It is rocky and precipitous in places, and it would not be practicable to use it except for a foot-way. A large part of the land has not been sold by the lot, and there are but few houses on the tract.

After the execution sale the plaintiff bought two more lots (Nos. 2 and 46) of the defendant company. Lot 2 bounds upon a public highway, and Lot 46 is separated from the same highway by one lot which is owned by the plaintiff. The deeds describe the lots by courses and distances and "as shown on the plan of the Winnipesaukee Land Company, recorded in Belknap County Records." Being doubtful as to the title to Lot 2, the plaintiff obtained a confirmatory deed thereof from the Russells; and when he took this deed he was informed by them that they owned the land between the railroad and the lake, and would do as they saw fit with the proposed streets and avenues. 'It was understood between them that the conveyances of these two lots "had no effect upon the land below."

If the plaintiff has rights in the streets which the defendants cannot deprive him of, the prayer of the bill is to be granted.

*Arthur. A. Folsom* (of Massachusetts) and *Stephen S. Jewett* (*Mr. Folsom* orally), for the plaintiff.

*Frank M. Beckford* and *Charles B. Hibbard* (*Mr. Beckford* orally), for the defendants.

PEASLEE, J. The proposition that the plaintiff has rights in the streets which the defendants cannot deprive him of is well established. *Walker* v. *Manchester*, 58 N. H. 438; *Bartlett* v. *Bangor*, 67 Me. 460; *O'Linda* v. *Lothrop*, 21 Pick. 292; *New England etc. Co.* v. *Company*, 189 Mass. 145; *Chapin* v. *Brown*, 15 R. I. 579; *Lord* v. *Atkins*, 138 N. Y. 184; *Lennig* v. *Association*, 41 N. J. Eq. 606; *Riedinger* v. *Railroad*, 62 Mich. 29. Thus far the authorities are unanimous. As the case is transferred, this entitles the plaintiff to the injunction as prayed for. But it is manifest that other questions are involved in this controversy. They have been argued by counsel, and their consideration is necessary in an equitable determination of the rights involved. These questions are: (1) To what streets do the plaintiff's rights extend? (2) To what lots are they incident? (3) Does a right exist along the shore line where the land is narrower than is shown upon the plan?

1. The plaintiff insists that, as incident to each lot he purchased by the plan, he acquired a right to use every street shown upon the entire tract. While cases are to be found which support this hard and fast rule, it cannot be sustained upon principle. The right is not based upon a covenant that the ways exist. *Howe* v. *Alger*, 4 Allen 206. It arises merely by way of estoppel. The time came when the grantor could no longer deny that streets existed as represented on the plan. "That time was when purchasers of lands, upon a consideration enhanced by the inducements held out by the proclamation of these landholders, acquired such rights with reference to their house-lots thus purchased, and the convenient and indispensable enjoyment of them, as would render it fraudulent on the part of the vendors to revoke their agreement by changing or abolishing the location of the streets laid down on their recorded plan, with reference to which their sales and conveyances had been made." *Walker* v. *Manchester*, 58 N. H. 438, 441. Since this is the foundation of the right here involved, it follows that all the elements of an estoppel by conduct must exist. One of these elements is that the representation made must be material to the action about to be taken. If the representation is immaterial, there is no estoppel. *Comings* v. *Wellman*, 14 N. H. 287, 292; *Stevens* v. *Dennett*, 51 N. H. 324, 333. The true rule, then, is that there is an estoppel to deny the existence of the ways shown upon the plan so far, and so far only, as the existence of the ways would be material to the owner of the land purchased. "In some . . . cases it is held that the purchaser of a lot described as bounded on a street or way is entitled to have it kept open for the whole distance shown by the plat or description; but the decision in every case has been based upon substantial equities. It could not have been otherwise; for estoppels arise upon equities, and are enforced for their protection." *Cooley*, J., in *Bell* v. *Todd*, 51 Mich. 21, 28.

How far the lay-out of the whole tract into some 200 lots concerns the purchaser of an individual lot is a question of fact to be settled in the superior court. In the language above quoted, the relation must be such as to create substantial equities before the relief here sought can be granted.

2. As the rights in the streets may extend further for one lot than for another, it is necessary to determine whether the plantiff can maintain this proceeding as to lands purchased from the defendant company, the deeds of which refer to the Winnipesaukee Company's plan. At the time the confirmatory deed to Lot 2

was given, the plaintiff was told that the Russells owned all the unsold lots lying between the railroad and the lake, and that they would do with the proposed streets as they saw fit. The parties then understood the deeds of Lots 2 and 46 did not affect the title to "the lands below." It is understood that this refers to the land north of the railroad. In view of these facts, it seems plain that as to Lots 2 and 46 no case for equitable relief is made out so far as the streets north of the railroad are involved. What the result might be if the plaintiff conveyed to an innocent third party, who relied upon the representations contained in the deeds from the defendants to the plaintiff, is a question not involved here. The plaintiff could not have relied thereon, and as to him there is no estoppel.

The land south of the railroad was not owned by the Russells; and unless it appears that they purpose to interfere with the plaintiff's rights therein, no case is made against them as to that tract. This land was, however, owned by the defendant Land Company. By its reference thereto in its deeds as "shown on the plan of the Winnipesaukee Land Company, recorded in the Belknap County Records," it represented that the lands were laid out according to that plan as effectively as though it had also caused the plan to be made and recorded in the first instance. Having made this representation, it is equitably bound to refrain from doing any act in contradiction of the inducements to the contract. As the company denies the right to use the ways as laid out, the plaintiff is entitled to his injunction so far as his interest is established.

The question whether the original laying out of the tract, recording the plan, and selling lots thereby constituted a dedication of the streets to public uses is not involved in the present proceeding. If an offer of these streets to the public has been made and is still outstanding, it has not as yet been accepted by those who represent the public. P. S., c. 67, s. 1. The most that could be said would be that an offer is open, and may be accepted or rejected.

3. The plan delineates Lake Shore avenue as following the marginal line of the lake. This line is a definite boundary and takes precedence over mere courses and distances. *Kent* v. *Taylor*, 64 N. H. 489, and cases cited. The lines of the interior lots shown upon the plan are of the latter class. There was no such land as these lines, or a part of them, indicate. The way is not affected by the fact that a mistake was made as to the quantity of land lying between the lake and the railroad. The plaintiff's lots in right of

which a decree is to be entered were all sold before there was any attempt to sell by descriptions which conflict with the existence of the avenue. The most casual inspection of the plan shows an intent that there be a continuous way along the lake front. It would so appear to prospective purchasers of lots. Whether this intent might have been abandoned by a sale of the shore before private rights in the avenue had attached is a question not presented in this case.

The fact that a portion or the whole of the avenue can be used only for a foot-path is not necessarily fatal to the plaintiff's claims therein. This tract was laid out for a summer colony, and a foot-path along a rugged shore might well be thought to be of value to each cottager. It might even be considered to be of greater value, from the fact that it could never be intruded upon by vehicular travel.

If follows from all these considerations that the decree to be entered may not be as broad as the prayer of the bill. It is a question to be settled by a consideration of all the equities of the situation. How far each lot is affected must be determined in the superior court. So far as the plaintiff's lots which were purchased in reliance upon the plan (or any of them) are found to be affected by the general scheme or by particular ways shown upon the plan, he is entitled to be protected by a decree.

*Case discharged.*

All concurred.