Ernest C. Arnold, et al.

*vs.*

Raymond Boulay

Kennebec.    Opinion, October 9, 1951.

*Willis A. Trafton, Jr.,* for plaintiff.

*Gerard B. Giguere,* for defendant.

Sitting: Murchie, C. J., Thaxter, Fellows, Merrill, Nulty, Williamson, JJ.

Williamson, J.    This is an action in a plea of the case to recover damages for obstruction of an easement.  The referee, by whom the case was heard with reservation of the right to except as to questions of law, found for the defendant.  The case is before us on exceptions to the acceptance of the referee's report.

Plaintiffs are the owners of a part of lot #102 and other numbered lots shown upon a plan of "Monmouth Highlands," a summer cottage development on the north-westerly shore of Tacoma Lake. The easterly line of the lots upon the plan is approximately eighty feet from the high water mark of the lake. The area between the easterly or shore front line of the lots and the high water mark is designated on the plan as "Lake Shore Road." Four "avenues" are shown between tiers of lots running from the rear of the tract to "Lake Shore Road."

The obstruction of which the plaintiffs complain is a cottage or camp erected by the defendant upon a lot with a frontage of ninety feet upon the lake and a depth of forty feet, lying entirely within "Lake Shore Road."

In the first count, the plaintiffs, as owners of a part of lot #102, allege that they are entitled to the uninterrupted use and enjoyment of all parts of the area shown as "Lake Shore Road," (1) as an open area for travel to and from lot #102 to other points on the plan and to Tacoma Lake, and (2) for recreation and as a park and as an open "unbuilt-upon" area between their lot and Tacoma Lake. Similar allegations are made in the second count with respect to the other lots owned by the plaintiffs.

In January 1908 the Commonwealth Lumber Company, owner of the tract, caused it to be divided into lots and the plan referred to to be prepared and recorded in the Registry of Deeds. The Company by warranty deed, dated in February and recorded in April 1908, sold to one Lothrop lot #102, "according to plan of land, Entitled "Monmouth Highlands" ... Which plan is recorded in Kennebec County, Registry of Deeds, for furthur refernce, and is Bounded ... on the East by Lake Shore Road." Lothrop in turn in October 1910 conveyed to Commonwealth Lumber Company a small parcel from the easterly end of lot #102, placing the easterly bound of the remainder of the lot some distance

westerly from "Lake Shore Road." The deed reads, in part: "Said premises are hereby conveyed upon the express condition that the same shall be dedicated and used as a part of Lake Shore Road as laid down on the above named plan and for no other purpose, and that no buildings or other structures shall ever be erected on the same. And also upon the condition that the owners of the remainder of said lot numbered 102, their heirs and assigns, shall have the right to pass and repass at all times, on foot or in teams, over the premises hereby conveyed to and from said Lake Shore Road, as now delineated on said plan."

Title to the remainder of lot #102, which it may be noted is not bounded by "Lake Shore Road" as shown on the plan, was acquired in 1947 by plaintiffs through and under Lothrop. Other lots, including lots touching "Lake Shore Road," were purchased by the plaintiffs in 1948. No question of plaintiffs' title to lots claimed by them arises.

The lot upon which the defendant has erected a cottage or camp was conveyed by the Commonwealth Lumber Company to one Bosworth by warranty deed in August 1908, and was purchased by defendant in 1950. The parties agree "that defendant now possesses whatever right, title and interest were acquired by said Bosworth by said deed."

From the referee's report, we quote the following: "It appears from the evidence that neither the so-called avenues nor the Shore Road have been wrought or improved. The town has not accepted them as town ways, nor has it made any repairs. It is not claimed that the general public has made use of them. The use appears to be only by lot owners and their invitees."

- - - - - - -

"The Referee rules that there was never a dedication under the legal rules pertinent to the term; that the streets, roads or so-called Avenues were never wrought; that they

were not used by the public; and to a limited extent only by lot owners."

The errors asserted by the plaintiffs in their written objections are: (1) failure to apply the rule that an easement is implied when land is sold described with reference to a recorded plan upon which streets and ways are shown; (2) failure to rule that the plaintiffs are entitled to an easement across that portion of "Lake Shore Road" on which defendant has erected a building; and (3) the ruling "that there was never a dedication under the legal rules pertinent to the term."

The referee placed his decision upon a finding there was no dedication of "Lake Shore Road" to public uses. Apparently he was of the view that at least a portion of "Lake Shore Road" was available to lot owners for travel, for he stated with reference to the defendant's lot, "It does appear, however, that there is still at least 40 feet left for travel to pass the lot."

For what purpose did the Commonwealth Lumber Company in creating the development set aside an eighty foot strip along the shore, known as "Lake Shore Road"? What was its intent when it sold lots with reference to the plan?

A right of way, or easement for travel, to and from the lots, eighty feet in width was clearly not required. The referee has so indicated in commenting upon the forty foot strip between numbered shore lots and defendant's lot. It is apparent from the nature of the property and the plan that the purpose was to provide an area along the lake shore of the width indicated for the benefit and use of the lot owners and their invitees, free from buildings and other obstructions, and with right of access to and use of the lake shore at all points.

The right to use of the shore, and to have the area open for the purposes customarily made of such property; neces-

sarily would be of great value to the lot owners. In planning the development, the owner must have weighed an expected increase in value of the lots in general from an open strip along the shore against loss from inability to sell lots bounded by the lake, and concluded that on balance it was more advantageous to set aside "Lake Shore Road" for the purposes indicated.

If such was not the intent of the owner, then we must say it proposed to retain the right to sell the entire frontage on the shore for cottage lots, leaving, at best, only a space sufficient for travel in front of the lots nearest the lake. Surely the Company at that time did not intend to lull Lothrop and other purchasers with a false promise of an open shore front available to all.

The Commonwealth Lumber Company changed its position by the sale of a lot in "Lake Shore Road" to Bosworth in August 1908. The referee speaks of the undisputed evidence "That the company practically simultaneously conveyed to the defendant's predecessor, the lot now claimed to be an unlawful infringement." The Bosworth deed, however, could not alter rights acquired under the Lothrop deed given and recorded prior thereto. Nor did the deed from Lothrop to the Company in 1910 change the rights in "Lake Shore Road" with respect to the remainder of lot #102 since acquired by the plaintiffs.

It is not necessary in our view of the case to determine whether there was an "incipient dedication" to the public. Clearly lot #102 was sold with reference to the plan. On such facts, by purchase with reference to a plan, the plaintiffs' predecessors, and hence the plaintiffs acquired, with reference to that part of lot #102 owned by them an easement by implication based upon estoppel in "Lake Shore Road." *Young* v. *Braman*, 105 Me. 494; *Sutherland* v. *Jackson*, 32 Me. 80; *Bartlett* v. *Bangor*, 67 Me. 460; *Harris* v. *South Portland*, 118 Me. 356. Such an easement is not

based upon a dedication to the public. It is a private right in no way dependent upon a prospective public use.

In *Lennig* v. *Ocean City Association,* 41 N. J. Eq. (14 Stew.) 606, 7 A. 491, 56 A. R. 16, the principle was stated in the following words:

> "Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares, or in other modes of a general nature calculated to give additional value to the lots delineated thereon, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portions so devoted to the common advantage otherwise than in the manner indicated. This principle has been asserted most frequently for the purpose of supporting dedications to uses strictly public; but it is by no means necessary that such a use should be created. . . . From this doctrine it, of course, follows that such distinct and independent private rights in other lands of the grantor than those granted may be acquired, by implied covenant, as appurtenant to the premises granted, although they are not of such a nature as to give rise to public rights by dedication. The object of the principle is, not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated."

See also *Bacon* v. *Onset Bay Grove Ass'n,* 241 Mass. 417; 136 N. E. 813 (sea shore); *Carroll* v. *Hinchley,* 316 Mass. 724, 56 N. E. (2nd) 608 (lake); *Douglass* v. *Belknap Springs Land Co.,* 76 N. H. 254, 81 A. 1086, 37 L. R. A., N. S. 953 (lake shore avenue following marginal line of lake); *Lake Garda Co.* v. *D'Arche,* Conn. 66 A. (2nd) 120 (lake); Annotation 7 A. L. R. (2nd) 607; 19 C. J. 928 — Easements, Sec. 127; 28 C. J. S. 701 — Easements, Sec. 39; 17 Am. Jur. 958 — Easements, Sec. 47.

There is no suggestion that the private rights of the plaintiffs have been lost by adverse possession as in *Harris v. South Portland, supra*.

With respect to that part of lot #102 owned by the plaintiffs, there exists by implication an easement in "Lake Shore Road" to the full extent thereof for the purposes intended by the Commonwealth Lumber Company as set forth above. They are entitled to enjoy "Lake Shore Road," as the owners of part of lot #102, free from the obstruction placed therein by the defendant.

In light of the error with respect to the first count relating to part of lot #102, the exceptions must be sustained. Accordingly it is not necessary that we pass upon the claim of the plaintiffs in the second count relating to other lots. A discussion of what rights the plaintiffs, as owners of other lots, may have in "Lake Shore Road" involves issues which we neither consider nor determine.

The entry will be

*Exceptions sustained.*