STATE OF MAINE                                    SUPERIOR COURT
Sagadahoc, ss.                                    AMH-SAG-9/26/2011

CONRAD BROOKS et al.,

                    Plaintiffs

v.                                                Docket No. SAGSC-CV-10-009

BARBARA CARSON,

                    Defendant

## DECISION AND JUDGMENT

This is an action brought pursuant to 23 M.R.S. § 3033(3), a provision of the Maine Paper Streets Act, by subdivision lot owners who seek to prevent their rights of access in a paper street from being terminated by the owner of lots abutting the paper street.

The case came before the court for a jury-waived trial on August 11 and 12, 2011. Most of the Plaintiffs as well as the Defendant were present with counsel, and presented evidence in the form of sworn testimony and exhibits. The parties' joint exhibits were admitted by stipulation at the inception of the trial. By agreement of the parties, the court and counsel conducted a view before trial of the lots and streets discussed in this decision.

Based on the entire record, the court adopts the following findings of fact and conclusions of law and grants judgment to the Plaintiffs.

1

## Factual and Legal Background

1.      The following is a list of the names of the parties to this case, with the following reference information for their parties' properties involved in this case:  the book and page numbers assigned to their deeds as recorded at the Sagadahoc County Registry of Deeds; the tax map lot numbers assigned to their properties as shown on Town of Phippsburg Tax Map No. 14, and the subdivision lot numbers assigned to their properties on the subdivision plan titled "Plan Showing Property Popham Beach Estates, Inc., Popham Beach, Maine" and recorded in 1922 in the Sagadahoc County Registry of Deeds, Plan Book 2, Page 53 ["the 1922 Plan"]"

- Plaintiffs Conrad S. Brooks and Kathleen D. Brooks, Book 457, Page 55, Tax Map Lot No. 109, 1922 Plan Lot Nos. 450-451 and 470

- Plaintiffs Albert E. Desmond and Christine E. Desmond, Book 2946, Page 104, Tax Map Lot No. 63, 1922 Plan Lot Nos. 446-448

- Plaintiffs Robert Tebbetts and Charlene Tebbetts, Book 2719, Pages 188, 191, Tax Map Lot No. 138, 1922 Plan Lot. No. not identified in the record

- Plaintiff Vivian J. Thompson, through the Vivian J. Thompson Living Trust, Book 1637, Page 96, Tax Map Lot No. 62, 1922 Plan Lot Nos. 423-424

- Plaintiffs Leland R. Oliver and Jacqueline Y. Oliver, Book 1536, Page 166, Tax Map Lot No. 106, 1922 Plan Lot Nos. 452-453, 468-469

- Plaintiff Popham Holdings, LLC, Book 2440, Page 127, Tax Map Lot No. 110, 1922 Plan Lot Nos. 419-422, 471

- Defendant Barbara Carson, Book 1728, Page 315, Tax Map Lot No. 144-1, 1922 Plan Lot Nos. 116, 425-427

2.      The parties' above-described properties are all lots in a subdivision located in the Popham Beach area of Phippsburg, in Sagadahoc County, Maine.  The parties' above-described properties are all shown as lots on two subdivision plans dating

2

to 1893 and a later plan from 1922. Only the 1922 plan is in evidence. The 1922 plan depicts several hundred subdivision lots, including those owned by the parties. *See* Joint Ex. 11.

3.     The 1922 plan also incorporates proposed streets that have never been accepted as public ways by the Town of Phippsburg. According to the Maine Paper Streets Act, a 1987 enactment codified at 23 M.R.S. §§ 3031-3035 and 33 M.R.S. §§ 460, 469-A, any such way not accepted as a public way by 1997 is deemed to have the status of a vacated public way (absent any extension of the acceptance deadline, of which there has apparently been none in this case). *See* 23 M.R.S. § 3032(1-A).

4.     The owner of a lot that abuts such a proposed, unaccepted way (also known as a "paper street") owns the land under the way to the center line, subject to the right of other subdivision lot owners to use and travel over the way. *See* 23 M.R.S. § 3031(2) (subdivision lot owners' "private right-of-way" over proposed, unaccepted ways); 33 M.R.S. § 469-A (abutting owners' title to paper streets). *See also Callahan v. Ganneston Park Development Corp.,* 245 A.2d 274, 278 (Me. 1968); *Arnold v. Boulay,* 147 Me. 116, 120, 83 A.2d 574, 576 (1951) (subdivision lot owners have an "easement by implication based upon estoppel" in proposed unaccepted ways).

5.     This case arises under provisions of the Paper Streets Act that allow the owner of a subdivision lot that abuts a paper street to acquire full ownership of the abutting portion of the paper street to the center line, thereby extinguishing the rights of access of all the other subdivision lot owners in that part of the paper street. *See* 23 M.R.S. § 3031-33.

3

6. The first step in the statutory process is for the lot owner who seeks to acquire full ownership of the abutting portion of a paper street to record in the appropriate registry of deeds a notice of claim of ownership in the form prescribed by statute. *See id.* § 3033(1).[1] The notice must describe the area claimed and list in alphabetical order the names of other lot owners of record in the subdivision, and it must also be mailed to those other lot owners within 20 days of its recording. *See id.*

7. The effect of a properly drafted, executed, recorded and mailed section 3033(1) notice is to trigger a one-year period during which any lot owner who is named in and receives the notice must record a sworn statement of claim in the portion of the paper street at issue, or else be "forever barred" from asserting the claim. *See id.* § 3033(2).[2] After taking that step, any such claimant must also commence "an action in equity" within 180 days or the claim is "forever barred." *See id.* § 3033(2).

8. At trial of the action, the plaintiff claimant must prove that deprivation of the claimant's rights of access over the portion of the paper street at issue would

---

[1] Section 3033(1) reads in part as follows:

> Any person claiming to own a proposed, unaccepted way or portion of a proposed, unaccepted way deemed vacated under section 3032 may record, in the registry of deeds where the subdivision plan, to which the notice set forth in this subsection pertains, is recorded, a conformed copy of the notice set forth in this subsection, with an alphabetical listing of the names of the current record owners of lots on the subdivision plan to which the notice pertains and their mortgagees of record.

23 M.R.S. § 3033(1).

[2] Section 3033(2) says that "[a]ll persons *receiving* a notice under subsection 1" are barred from asserting claims of access to the paper street involved unless they file and prove their claims. (emphasis added). Therefore, if a lot owner who was named in a section 3033(1) notice missed the one-year deadline for recording a claim or the 180-day deadline for filing an action, but subsequently asserted a claim, the giver of the notice would likely have to prove the recording of the notice and the claimant's receipt of the notice to establish the affirmative defense of bar.

4

"unreasonably limit" access from the claimant's lot to a public way, a public body of water, or a common facility or common land in the subdivision. *See id.* § 3033(3).

9. The plain purpose of the statutory procedure is to balance the competing policy objectives of extinguishing unused and unnecessary rights in paper streets on the one hand, and protecting reasonable rights of access by subdivision lot owners to important resources on the other hand. *See* 23 M.R.S. § 3035 (statement of purpose); *Driscoll v. Mains,* 2005 ME 52, ¶8, 870 A.2d 124, 126 ("The Paper Streets Act was enacted in 1987 for the purpose of clarifying title to unclaimed paper streets and to eliminate the possibility of ancient claims").

10. Four of the paper streets shown on the 1922 subdivision plan—Gosnold Street, Sea Street, Seguin Street and Surf Street—are involved in this case. They, along with the lots owned by Plaintiffs and Defendant, are depicted on the attachment to this Decision and Judgment.[3]

11. Gosnold Street runs approximately in an east-west direction, with its eastern end at the Kennebec River and its western end at a T intersection with Sea Street. Defendant Barbara Carson owns the lots on either side of the west end of Gosnold Street. Her lot on the south side of Gosnold Street is what is shown as Lot 116 on the 1922 plan, and her lot on the north side of Gosnold Street consists of what are shown as Lots 425, 426 and 427 on the 1922 plan.

---

[3] The attachment is a photocopy of a demonstrative aid to the court that in turn consists of a marked up copy of a survey plan admitted into evidence. The parties' surnames are shown on their lots. Their claims involve what is shown on the attachment as the shaded portion of Gosnold Street between the two Carson lots.

5

12. Subject to the rights of Plaintiffs and other owners of the lots on the 1922 Plan, the Defendant owns the entire width of the portion of Gosnold Street abutted on both sides by her property, and owns the northern half of the portion of Gosnold Street that abuts her northerly lot but not her southerly lot.

13. In August 2008, Defendant recorded and sent a notice pursuant to 23 M.R.S. § 3033(1), with the intent of triggering the time periods in section 3033(2) within which the lot owners named in the notice had to file claims and bring an action, or be barred from asserting their rights in the portion of Gosnold Street owned by Defendant. *See* Joint Ex. 4. The notice identifies the area claimed and lists the names of the current record owners of sixteen tax map lots in the subdivision, including all of the Plaintiffs.

14. Consistent with the requirements of section 3033(2), the Plaintiffs filed timely statements of their claimed rights in the portion of Gosnold Street described in the Defendant's notice to them, and have timely commenced this action.

<u>The Issue of the Sufficiency of the Defendant's Notice</u>

15. Plaintiffs have raised the threshold legal issue whether the Defendant's notice was defective in listing the names of some but not all of the record owners of lots on the 1922 subdivision plan.

16. Given that the 1922 plan shows hundreds of subdivision lots and given that the relevant town tax map shows many more than 16 distinct tax map lots in the area occupied by the subdivision, *see* Joint Ex. 3, the Defendant's notice plainly omits the names of many owners of lots on the 1922 Plan. *See, e.g.,* Joint Exs. 2, 23, 12, 20,

6

21, 22, 30. One such owner whose name was omitted is Nancy Stimson, the Defendant's sister.

17. Neither party has directed the court's attention to legislative history or Maine court precedent that would clarify whether a section 3033(1) notice must name all owners of lots on the subdivision plan, and the court has located no such history or precedent. Accordingly, the court addresses the question in the context of the wording and purpose of the statute.

18. The statute regarding the form of notice states:

> Any person claiming to own a proposed, unaccepted way or portion of a proposed, unaccepted way deemed vacated under section 3032 may record, in the registry of deeds where the subdivision plan, to which the notice set forth in this subsection pertains, is recorded, a conformed copy of the notice set forth in this subsection, *with an alphabetical listing of the names of the current record owners of lots on the subdivision plan to which the notice pertains and their mortgagees of record.*

23 M.R.S. § 3033(1) (emphasis added).

19. For the reasons enumerated as follows, the court concludes that the statute requires a section 3033(1) notice to name and be sent to the current record owners of all lots on the pertinent subdivision plan:

- The primary purpose of the Paper Streets Act is served only if a section 3033(1) notice names the owners of all lots in the subdivision. The Legislature's intent is for the Act to be "liberally construed to [e]ffect the legislative purpose of enhancing the merits of title to land by eliminating the possibility of ancient claims to proposed, unaccepted, unconstructed ways that are outstanding on the record but unclaimed." 23 M.R.S. § 3035. Interpreting section 3033(1) to require notice to all land owners who have rights in the way at issue serves that purpose, by assuring that the paper street status of the way is terminated, even if some of those owners file and prove claims, thereby converting rights appurtenant held in common with all other lot owners into rights appurtenant to their own individual lots.

7

- To permit a notice under section 3033(1) to be directed piecemeal to fewer than all lot owners in a subdivision does not advance the purposes of the statute, because the paper street would retain its status as to the lots whose owners' names are omitted from the notice. A confusing patchwork of rights would be the result—the omitted owners retain all paper street rights of access; the individual claimants who file and prove their claims have individual rights in the nature of easements appurtenant, and only the named owners who did not file and prove their claims have no rights.

- Permitting notices to be addressed to fewer than all owners also creates the potential for multiple section 3033(1) notices to be issued for the same portion of a paper street, thereby triggering duplicative actions under section 3033(3), with a risk of inconsistent results among similarly situated lot owners. Although section 3033(3) requires a lot-by-lot assessment of the effect of limiting access over a paper street, lots that are adjacent or in close proximity to one another are likely to be affected to a similar or even identical degree. This case actually illustrates that point. Requiring a notice given under section 3033(1) to include all owners of lots in the pertinent subdivision assures that the rights of all such owners who pursue claims can be simultaneously and consistently adjudicated.

- Permitting the lot owner who gives notice under section 3033(1) to pick and choose which other lot owners to include in the notice invites manipulation. To be sure, there is no evidence of manipulation in the present case—the Defendant's notice appears to have been directed to the lot owners who over the years have gained access to Sea Street and the ocean from the Seguin Street area of the subdivision. However, the potential remains under the Defendant's interpretation of the statute.

- The wording itself of the statute supports the same conclusion. Defendant says that the phrase "to which the notice pertains" modifies the phrase, "owners of lots," in arguing that a section 3033(1) notice may "pertain" to some but not all owners of lots on the plan. However, a similar phrase, "to which the notice set forth in this subsection pertains," appears previously in the same sentence in relation to the plan itself, suggesting that the second reference, "to which the notice pertains," also refers to the plan and not, as Defendant suggests, to the lots on the plan or the owners of those lots.

- The Defendant's interpretation would mean the statute has grammatical flaws,[4] and as noted above, her interpretation does not advance the purposes of the Paper

---

[4] The phrase "to which the notice pertains" would be a misplaced modifier under Defendant's interpretation. To be grammatically correct as interpreted by the Defendant, the phrase should read " . . . the names of the current record owners of lots to which the notice pertains on the subdivision plan . . ."

8

Streets Act. An observation by the Law Court concerning a different statute in a different context seems *apropos* to borrow for this case: "[R]eading the sentence without the grammatical strain urged by [the Defendant] makes sense in the context of the Act within which it was enacted." *Maine Association of Health Plans v. Superintendent of Insurance,* 2007 ME 69, ¶39, 923 A.2d 918, 929.

20. Given the conclusion that the statute requires all record owners of lots on the 1922 subdivision plan to be named in a section 3033(1) notice, the Defendant's notice was not in compliance—even substantial compliance—with the statute. The notice therefore must be regarded as void. On that ground alone, Plaintiffs are entitled to judgment. However, because the issue appears to be one of first impression, the court elects to address the merits of the case, to obviate a possible remand for findings if the foregoing exercise in statutory interpretation is not upheld on appeal.

## Findings and Conclusions on the Merits

21. The Paper Streets Act defines the elements of a claim under section 3033(3), title 23, and allocates the burden of proof, presumably by a preponderance of the evidence, as follows:

> Upon trial of an action initiated under subsection 2, the court shall grant judgment for the claimant only if it finds that:
>
> A. The claimant has acquired an interest in the way or portion of a way; and
>
> B. The deprivation of the claimant's rights in the way or portion of the way unreasonably limits the claimant's access from his land shown on the recorded subdivision plan to:
> (1) A public way;
> (2) A public body of water; or
> (3) Common land or a common facility within the subdivision.

---

Even apart from that, the fact that the phrase reads ". . . the names of the current record owners of lots on *the* subdivision plan to which the notice pertains" (emphasis added) suggests that "to which the notice pertains" refers to the subdivision plan, not the lots on the plan. Otherwise, the statute likely would read, " . . . the names of the current record owners of *the* lots on the subdivision plan to which the notice pertains . . . " (emphasis added).

23 M.R.S. § 3033(3).

22. The parties agree that, subject to the outcome of this case, Plaintiffs presently have an interest in Gosnold Street for purposes of the statute. Their claim focuses solely on their ability to gain access from the lots to the Atlantic Ocean along the southeast side of the peninsula on which their portion of the subdivision is located. They do not claim that their access to the Kennebec River is affected, nor does their claim focus on any other public water body, or any public way, common area or facility.

23. As a result, the ultimate question in this case—a mixed question of law and fact—is whether the Plaintiffs have proved, by a preponderance of the evidence, that depriving them of their rights in the portion of Gosnold Street owned by Defendant would unreasonably limit their access via that portion of Gosnold Street to the Atlantic Ocean, which clearly qualifies as a public body of water.

24. The statute does not define the term "unreasonably limits," nor does it articulate any specific factors to be considered in determining what limits on access are unreasonable. However, several governing principles come to mind.

25. First, the test of reasonableness must be an objective one. Rights of access over paper streets are appurtenant to the lot, not personal to the lot owner. In asserting their paper street rights, the Plaintiffs are defending one of the benefits of owning their lots, not asserting claims personal to them. Thus, the question of whether depriving a lot owner of rights in a paper street unreasonably limits access from the lot to the ocean focuses mainly on the attributes and circumstances of the lot rather than the attributes and circumstances of the person who happens to own the lot at the time.

10

26.     Second, whether access from a lot to a given resource—be it a public way, public body of water, common area or common facility—is "unreasonably limited" for purposes of the statute must depend in large part upon how important it is that there be access to that resource from that lot.   In other words, the reasonableness of a limitation on access to a resource must be, at least in part, a function of the extent to which access to the resource benefits the lot.

27.     The "benefit" concept derives from the principle that rights in paper streets are intended to "secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated." *Arnold v. Boulay,* 147 Me. 116, 121, 83 A.2d 574, 577 (1951), *quoting Lennig v. Ocean City Association,* 41 N.J. Eq. 606, 7 A. 491, 56 A. R. 16 (1886).

28.     Third, the statute implies an element of causation—depriving the lot owner of the right of access to the resource over the paper street at issue must have some effect upon the lot owner's ability to gain access to the resource from the lot. Also, to assess the effect of deprivation, one must examine access from the lot to the resource with and without access over the paper street at issue.   Presumably, the greater the effect of the deprivation upon the access from a given lot to a given resource, the more likely it is to be deemed unreasonable, all other factors being equal.

29.     It follows, then, that whether depriving a subdivision lot owner of access from the owner's lot to a given resource (be it a public way, public water body or a

11

common area or facility) via a particular paper street "unreasonably limits" access between the lot and the resource depends mainly on two variables:

First, how valuable to the lot is the benefit of having access to the resource, and Second, how substantial is the limitation on access from the lot to the resource that would result from depriving the lot owner of access via the paper street at issue.

30. It is primarily the interplay between those two variables that will determine the reasonableness or unreasonableness of the limitation on access associated with depriving the lot owner of access to the resource over a particular paper street. Thus, even a minor limitation on access to a resource of critical importance to the lot—such as the only access from the lot to a public way—might be deemed unreasonable, whereas a major limitation on access to a resource of no importance to the lot might be deemed reasonable.

31. However, given the statutory reasonableness standard and the equitable nature of the action, other factors can also play a part in the analysis. The benefit to Defendant of depriving the Plaintiffs of their rights in the disputed portion of Gosnold Street is arguably one such factor, and it is addressed below.

32. As a threshold matter, the court concludes that, based on the essentially identical circumstances of the Plaintiffs' lots in terms of ocean access, the Plaintiffs' claims can be analyzed together rather than individually. It is true, as the Defendant argues, that the section 3033(3) determination of whether a claimant has proved an unreasonable limitation on access normally focuses on the claimant's lot specifically.

12

In this case, however, there are no material differences among the Plaintiffs' six properties that would justify differing outcomes, and the Plaintiffs' claims therefore rise and fall together.

33.    All of the Plaintiffs' lots are similarly situated in all material respects. They are all clustered at or near the intersection of Seguin Street with Gosnold Street. They all have exactly the same options for access to the ocean, with only minor variations in the distance from each lot to each means of access. Ocean access has the same degree of importance to all of the Plaintiffs' lots. The limitation on access to the ocean that would result from depriving the Plaintiffs of their rights of access over the disputed portion of Gosnold Street is the same for all Plaintiffs and their lots.

34.    There are certainly differences among the individual Plaintiffs in terms of their historical means and frequency of access to the ocean—a few Plaintiffs live on their lots year-round or use their lots extensively, and others do not. Some go to the ocean often, others do not.

35.    However, the differences among the Plaintiffs who own the lots—in level of usage of the lot and in frequency and method of access to the ocean—do not justify differentiating among the lots themselves, given that the Plaintiffs' paper street rights are appurtenant to the lots, and given also that the Plaintiffs' lots are identically situated in terms of the effect of depriving them of access over the disputed part of Gosnold Street.

36.    Even if a subdivision lot is not built upon, meaning no one gains access from the lot to anywhere else, then limiting the lot owner's rights of access over a paper street to an important resource such as a public way or the ocean might be still be

13

unreasonable—as long as the lot can be built upon and future owners could need or want to have access to such a resource. This is why the test of what is reasonable has to be an objective one that focuses on the benefit of access to the lots at issue, rather than a subjective one that focuses on whether the people who happen to own the lots at the time have actually availed themselves of that benefit.

37. Past access by owners is certainly relevant, but mainly to determine what means of access are available and what means are more beneficial than others. By that measure, Sea Street has been among the most, if not the most, important means for Plaintiffs to gain access to the ocean.

38. Because there are no differences among the Plaintiffs' lots in terms of the resulting limitation on their access to the Atlantic Ocean if their rights are terminated, there is no need to consider Plaintiffs' lots individually in analyzing the reasonableness of that limitation. The Plaintiffs' lots can all be considered together.

39. The value and importance of the Atlantic Ocean to Plaintiffs' lots cannot be overstated. The very *raison d'être* of the Popham Beach Estates subdivision may well be its proximity to the Atlantic Ocean. The paramount benefit of owning a lot in the Popham Beach Estates subdivision is that it affords ready and convenient access by various means to the ocean and the beaches along the ocean. Hence, the rights of a subdivision lot owner in the paper streets that enable access by various means from the lot to the ocean are likewise a benefit of paramount importance to the lot.

40. The other primary variable—the actual effect on Plaintiffs' access to the ocean of eliminating their rights of access over the disputed portion of Gosnold Street—

14

requires the court to identify the other means of access to the ocean that would remain available to them, and to compare those other means of access to the means of access of which they would be deprived.

41. The evidence revealed that the Plaintiffs presently have six means of access to the Atlantic from their lots, three of which have legal standing and three of which are permissive only.[5]

42. The three permissive means are:

- A road that runs within the bounds of Surf Street south from its intersection with Gosnold Street but then jogs east outside the bounds of the paper street, and then cuts back across before heading southwest toward the beach. Thus, the Plaintiffs cannot get to the ocean without leaving the bounds of the paper street and crossing private property in which they have no established rights.

- Another road that cuts back and forth across Seguin Street as it winds toward the ocean. This road is almost entirely outside the bounds of the paper street except when it cuts across the paper street. Again, Plaintiffs have no established right to use this means of access.

- Lastly, some of the Plaintiffs have been able to get to Sea Street by crossing over the lots of other neighbors—the Hatches—whose property has frontage on Sea Street.

43. A means of access may or may not include a right of access. Plaintiffs presently have no established right of access to the ocean via any of these three permissive means. Defendant notes that there has never been any objection to Plaintiffs' permissive use of any of these means of access, and that even if there were a future objection, Plaintiffs may be able to establish prescriptive rights over the two ways, at least. However, as Plaintiffs respond, there could be an objection at any time, and

_____

[5] Defendant points to Beach Avenue as an additional means of access, but Beach Avenue runs along the ocean, not to the ocean. To get to Beach Avenue, the Plaintiffs have to use one of the six alternatives analyzed in this Decision and Judgment. Access involving Beach Avenue therefore does not need to be analyzed separately from access to the ocean itself.

15

the prospect of future prescriptive easement litigation is not a reasonable substitute for their established rights in the disputed portion of Gosnold Street.

44.    Plaintiffs' fundamental premise is that permissive access is not a reasonable substitute for legal rights of access, and the court agrees.   It would be unreasonable to deprive Plaintiffs of their established rights in the disputed portion of Gosnold Street in favor of what is now permissive, revocable access over private property, even with the possibility of obtaining prescriptive rights.

45.    The Plaintiffs' three established legal means of access to the Atlantic are, first, going east on Gosnold Street to Sea Street[6] and thence south down Sea Street to the ocean; second, going directly south down Seguin Street to the ocean, and third, going west on Gosnold Street to Surf Street, and thence south on Surf Street to the ocean.

46.    For access to the ocean by means of a paper street to be entirely legal and within Plaintiffs' rights, Plaintiffs have to be able to get to the ocean without going outside the bounds of the paper street.[7]

47.    Some of the Plaintiffs have used Sea Street to reach the Atlantic Ocean. Sea Street is the only paper street that has a historically used travel way entirely within

---

[6]  Plaintiffs can also gain access to Sea Street by backtracking up Seguin Street, away from the ocean, to where it meets Sea Street, but this is not a reasonable alternative means of access—at least on foot—to using Gosnold Street to get to Sea Street.  If Plaintiffs wished to take a vehicle down to the ocean via Sea Street, it might be reasonable to expect them to drive back up Seguin Street and then down Sea Street to the ocean.   Access on foot appears to be the focus of the Plaintiffs' claims to the disputed portion of Gosnold Street, at least in this case.

[7]  Given the parties' agreement that all three paper streets—Sea, Seguin and Surf Streets—afford the Plaintiffs legal rights of access to the ocean, it is unnecessary to determine in this case whether the Plaintiffs and other subdivision lot owners have rights beyond the limited rights of the public in the areas of beach—which may or may not be subdivision common areas or facilities for the benefit of lot owners—depicted separately from the lots and streets on the 1922 plan.

16

the paper street boundaries. Unlike Seguin and Surf Street, Sea Street allows subdivision owners legal access to the ocean on a gravel roadway. Sea Street reaches the beach in an open area and then bends right toward Popham Beach State Park. Because the travel way is wide, flat and located entirely within the paper street, and because Sea Street opens directly onto the beach, it is the paper street that affords the best legal access to the ocean, which is probably why the evidence indicated that the Plaintiffs have used it more often than the other paper streets, Seguin Street and Surf Street.

48. For some years—even decades—some Plaintiffs reached Sea Street by crossing property of the Defendant's sister, Nancy Stimson, lying south of the Defendant's lots, but were told more recently, when she built a house, not to cross her property. Since then, they have either cut through the yard of other neighbors, the Hatches for instance, or in the case of Conrad and Kathleen Brooks, used Gosnold Street a few times to get to Sea Street.

49. To get to the ocean via Gosnold and Sea Streets, the Plaintiffs would have to travel 200 feet or less over the disputed portion of Gosnold and then would have an easy passage down the gravel roadway of Sea Street to the ocean. On the view, it was evident that the disputed portion of Gosnold Street was overgrown and a fence blocked easy access. However, with clearing of brambles and other obstacles to passage and perhaps some landscaping for steps as needed, Gosnold Street would be a good means of gaining access to Sea Street and down Sea Street to the ocean.[8]

---

[8] The Defendant argues that Gosnold Street has little value to Plaintiffs as access because it has steep slopes and is overgrown with brambles and other vegetation; because Plaintiffs would have to

50.     The Plaintiffs' second means of legal access to the ocean is via Seguin Street. Although Seguin Street is Plaintiffs' most direct route to the Atlantic Ocean, Seguin Street is not a real street for nearly all of its length—it is hilly and wooded. Until recently, one could not reach the Atlantic via Seguin Street at all without staying almost entirely outside the bounds of the paper street. One explanation for why the traveled roadway winds back and forth across Seguin Street is that the topography of the area within the paper street is challenging.

51.     Within the past year, in an effort to prove that the Seguin Street paper street can be made somewhat passable, the Defendant's daughter and niece have made a trail that affords passage single-file over rough and uneven terrain. Even with the trail, it would still be easier for the Plaintiffs to pass 200 feet over the disputed portion of Gosnold (once a passage over it is cleared) and then about 800 feet down the gravel roadway of Sea Street than to go along the approximately 800-foot length of Seguin Street to the ocean.

52.     The Plaintiffs' third means of access is via Surf Street, but it appeared during the view that it would be impossible to pass over Surf Street without leaving the paper street, and that it would be difficult to create a travel way along a portion of the

---

walk across Defendant's driveway and pass near her Defendant's home, and also because access over Gosnold Street is largely blocked at the Thompson lot. It is true that parts of the portion of Gosnold Street are overgrown and sloping, but, as noted in the text, Gosnold Street can readily made comfortably passable by the Plaintiffs. As to the Defendant's driveway and home, the Defendant could have configured her improvements differently. As to the Thompson lot, it is true that the house and landscaping on the lot block all but a few feet of the width of Gosnold Street, but there is still room for pedestrians to pass. If the landscaping became a real impediment, its footprint could be reduced as needed to expand passage.

18

paper street. Access to the ocean via Surf Street, too, does not compare to access via Sea Street.

53. Thus, if one eliminates permissive means of access as not being reasonable substitutes for legal means, and then one compares the various legal means of access, access via Gosnold Street (if a walkway is constructed) and thence down Sea Street to the ocean is the best of the three legal means of access to the Atlantic Ocean for the Plaintiffs. Seguin Street is second best and Surf Street seems inaccessible at least for part of its length without major work.

54. At trial, after a few of the Plaintiffs conceded on cross-examination that they have "reasonable" means of access to the Atlantic Ocean other than access via Gosnold Street and Sea Street, Defendant moved for judgment on the spot on the ground that this concession meant that those Plaintiffs had not meet their burden of proof. However, the fact that Plaintiffs have other means of access—even other reasonable means of access—to the Atlantic Ocean does not in and of itself mean that they lose their rights in the disputed portion of Gosnold Street.

55. The statutory definition of a claimant's burden of proof in section 3033(3) does not suggest that the Plaintiffs must prove that the deprivation of access over the disputed portion of Gosnold Street would eliminate any reasonable means of access to the ocean, only that the limitation on access resulting from the deprivation would be unreasonable. In fact, given the appeal and value of easy access to the ocean to the lots in this subdivision, it might not be unreasonable for Plaintiffs' lots to retain

19

multiple means of legal access via all three paper streets. Ample means of convenient ocean access, after all, is a benefit inferentially implicit in the design of the subdivision.

56. The evidence also showed that the Plaintiffs have not regularly used Gosnold Street to get to Sea Street—only a couple of the Plaintiffs have used it at all. Defendant argues that Plaintiffs' lack of use of the disputed portion of Gosnold Street means that it is not unreasonable to deprive them of that means of access to the ocean.

57. The reason why some Plaintiffs have not used the disputed portion of Gosnold Street to any real extent is because they have been mostly been gaining access to the ocean, mainly via Sea Street, by various permissive means, which is not a reasonable substitute for legal access. Their recourse to permissive means does not mean that they must lose their only reasonable legal means of access to Sea Street.

58. In addition, as noted above, the standard is an objective one that does not vary according to the habits and preferences of the person who happens to own or occupy the subdivision lot at the time. Evidence that the Plaintiffs regularly used Gosnold Street to get to Sea Street would have augmented their proof, but the absence of such evidence is not fatal to their case.

59. The same principle means that, although Plaintiffs Robert and Charlene Tebbetts did not testify at trial, the fact that their lot is so similarly situated to those of the other Plaintiffs puts them in the same position as the Plaintiffs who did testify. Having established rights of access to the ocean is as beneficial and important to their lot as it is to the other Plaintiffs' lots. The deprivation of legal access over Gosnold Street to Sea Street will therefore have the same effect on the Tebbetts lot as on every

20

other lot of the Plaintiffs. The question whether the deprivation would unreasonably limit the Tebbetts lot's access to the ocean has the same answer.

60. The other factor in the analysis that merits discussion is the benefit to Defendant in terms of privacy of extinguishing Plaintiffs' rights in the disputed portion of Gosnold Street. For the Plaintiffs to retain their rights in the disputed section of Gosnold Street may render the Defendant's property less private than it would be otherwise, depending on the extent to which the Plaintiffs and other owners actually exercise their rights. Such is always the case whenever rights of access over a paper street next to a dwelling are actually exercised.

61. The elements of a claim as defined in section 3033(3) call for the focus be mainly on the effect of the Defendant's claim on Plaintiffs' access, and not, at least in any direct sense, on the effect on the Defendant's privacy of granting or denying the Plaintiffs' claims.

62. Moreover, the circumstances of this case do not justify giving the Defendant's privacy interests great weight. When the Defendant built her house in 2002, she chose to face it toward Gosnold Street and to install her driveway so that users of Gosnold Street have to walk across it, so any lack of privacy is to some extent the result of her own actions. Had she not built her driveway so it crosses over the paper street, plantings or fencing that would screen users of the paper street from view would have been feasible.

63. Because the disputed portion of Gosnold Street is the Plaintiffs' only reasonable legal means of access to Sea Street, which is in turn their best legal means of

21

access to the Atlantic Ocean, the Plaintiffs have met their statutory burden to prove that depriving them of their present rights in the disputed portion of Gosnold Street would more likely than not unreasonably limit access from their lots to the Atlantic Ocean. *See* 23 M.R.S. § 3033(3).

64. Plaintiffs have not requested any relief beyond a declaration of the parties' relative status and respective rights *vis-à-vis* the portion of Gosnold Street owned by the Defendant. In particular the Plaintiffs have not requested injunctive relief, or any specific definition of their rights in the disputed portion of Gosnold beyond a determination that their rights have not been affected or extinguished by virtue of the Defendant's section 3033(1) notice. Accordingly, the substantive relief herein is limited to a declaratory judgment.

## Conclusion

For the reasons stated, it is hereby ordered and declared as follows:

(1) Judgment is hereby granted to the Plaintiffs against the Defendant.

(2) It is hereby ordered, declared and decreed as follows:

    a. The Notice recorded by Defendant Barbara Carson August 14, 2008 in Sagadahoc County Registry of Deeds Book 3010, Page 245, purporting to affect the rights of owners of lots shown on "Plan Showing Property Popham Beach Estates, Inc., Popham Beach, Maine," recorded at Plan Book 2, Page 53, Sagadahoc County Registry of Deeds, is void and of no effect whatever upon the rights of the persons named in such notice.

    b. The Plaintiffs and all other current record owners of lots shown on the aforementioned "Plan Showing Property Popham Beach Estates, Inc., Popham Beach, Maine" retain and possess all appurtenant rights of access to, use of and travel over the portions of Gosnold Street abutting Lots 116 and 425, 426 and 427 as shown on the aforementioned Plan, granted by law to subdivision lot owners in proposed, unaccepted ways in the subdivision.

22

(3) Plaintiffs are awarded their costs as prevailing parties.[9]

(4) Plaintiffs may submit, at their option, a proposed abstract of judgment suitable for recording in the Sagadahoc County Registry of Deeds.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Decision and Judgment in the docket.

Dated 23 August 2011

A. M. Horton
Justice, Superior Court

---

[9] Plaintiffs' complaint also requests an award of attorney fees without identifying a statutory or other valid basis for such an award. Plaintiffs may request reconsideration under M.R. Civ. P. 59(e) if they have a valid basis on which to request attorney fees.

23



ATLANTIC    OCEAN