MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2026 ME 1
Docket:      BCD-24-539
Argued:      September 10, 2025
Decided:     January 13, 2026

Panel:       STANFILL, C.J., and MEAD and LAWRENCE, JJ., and HJELM, A.R.J.,[*] and HUMPHREY, A.R.J.


RICHARD G. TAPPEN et al.

v.

CLARK T. HILL et al.


STANFILL, C.J.

[¶1]    The parties are the owners of properties in a Phippsburg subdivision known as Popham Beach Estates.  The plaintiffs—Richard G. Tappen, Sheila M. Tappen, and Tapco, LLC (collectively the Tappens)—appeal from a judgment of the Business and Consumer Docket (*McKeon, J.*) declaring that a portion of their property on Sea Wall Beach[1] is burdened with an implied easement for recreational purposes.  The implied easement benefits property owned by the defendants, Clark T. Hill, Meredith A. Inocencio, Richard S. Hill, Dianna S. Kilgallen, Brian Kilgallen, and Hill Family Cottage Corp. (collectively

---

  [*]  Although not available at oral argument, Justice Hjelm participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

  [1]  Both "Seawall" and "Sea Wall" Beach appear in the record; we use the spelling used on the original subdivision plans.

2

the Hill Family). The Tappens also appeal from the portion of the judgment declining to declare the location of the northern boundary of Sea Wall Beach on the face of the earth. We hold that the court understood and appropriately applied the doctrine of implied easement by subdivision and sale and did not clearly err in declining to locate the northern boundary of Sea Wall Beach on the face of the earth. We therefore affirm.

## I. BACKGROUND

[¶2] The Popham Beach Estates subdivision is depicted in two plans recorded in 1893 and 1922. A row of lots, including lots numbered 204 through 208, is situated in an area designated "sand dunes" on the 1893 plan. The lots border a stretch of land labeled "Sea Wall Beach" on both the 1893 and 1922 plans. The plans do not specify the location of the boundary line between the row of lots and Sea Wall Beach or indicate whether Sea Wall Beach includes the dry-sand area.

[¶3] The Tappens own lots 205 and 206. Just northeast of lot 204, slightly removed from Sea Wall Beach, are lots 76 and 77. The Hill Family owns lots 76 and 77, as well as other lots which are farther inland. In 2021, the Tappens obtained a release deed from the successor-in-interest to the original developer; the release deed conveyed the portion of Sea Wall Beach located

between lots 208 and 77.[2]   This beach area was left unnumbered and unallocated in the 1893 and 1922 subdivision plans and is the subject of this dispute.

[¶4]   The various deeds in the parties' chains of title describe the properties by lot numbers and by reference to the 1893 and 1922 subdivision plans.  The deeds contain no other descriptions of the property boundaries.

[¶5]   The Hill Family and their tenants, guests, and invitees have historically used the stretch of Sea Wall Beach now owned by the Tappens for recreation.  The Tappens seek to exclude the Hill Family from freely entering and using that portion of the beach.

[¶6]  In May 2022, the Tappens filed a complaint[3] in the Superior Court based on the repeated encroachment on the Tappens' portion of Sea Wall Beach by the Hill Family and their associated guests, tenants, and invitees.  The Tappens sought a declaratory judgment affirming their property rights and an order enjoining the Hill Family from encroaching upon their property or using it for recreational purposes.  In response, the Hill Family filed various

---

[2] This portion excludes the land between lot 77 and the high-water mark of the Atlantic Ocean, which is owned by the Hill Family.  It also excludes the land between lot 206 and the high-water mark, which is owned by a nonparty to this case.

[3] Tapco, LLC was not originally a party but was joined as a party-in-interest after trial.

counterclaims, including a claim that they hold an implied easement over the stretch of Sea Wall Beach at issue. In December 2022 the matter was transferred to the Business and Consumer Docket.

[¶7] The court held a bench trial in September 2024. In November 2024, the court entered a judgment for the Hill Family, finding in relevant part that they held an implied easement by subdivision and sale over the Sea Wall Beach portion of the Tappens' property.

[¶8] As depicted on the plans, the northern boundary of Sea Wall Beach is the southern boundary of lot 205. The court considered the question of where that boundary is located on the face of the earth. The Tappens argued that the boundary is the high-water mark because "beach" means the "'land lying between the lines of the high water and low water over which the tide ebbs and flows.'" *Almeder v. Town of Kennebunkport*, 2019 ME 151, ¶ 8, 217 A.3d 1111 (quoting *Hodge v. Boothby*, 48 Me. 68, 71 (1861)). The Hill Family argued that the boundary is the line between the dry sand and the dunes, although there was no testimony about where that boundary was on the face of the earth when the 1893 plan was created. Weighing both theories, the court explained that "while the court finds the boundaries of Lot 205 are the same as those granted at the time the lot was first conveyed, there is insufficient

evidence to locate the southern boundary of [lot 205] on the face of the earth." As a result, the court declined to fix the location of the southern boundary of lot 205.[4]

[¶9]  The Tappens timely appealed, challenging the court's conclusion that there is an implied easement by subdivision and sale over the Sea Wall Beach portion of their property and the court's refusal to conclude as a matter of law that the boundary between lot 205 and the Sea Wall Beach portion is the high-water mark.

## II.  DISCUSSION

### A.    Implied Easement by Subdivision and Sale

[¶10]  The Hill Family asserts the right to use all of Sea Wall Beach for recreation.  When a party claims that an easement is created by a deed, the "scope of a party's easement rights must be determined from the unambiguous language on the face of the deed."  *Matteson v. Batchelder*, 2011 ME 134, ¶ 16, 32 A.3d 1059 (quotation marks omitted). We review de novo the interpretation of a deed.  *Id.* ¶ 12.  "Only if language in a deed is ambiguous may a court consider extrinsic evidence to determine the intent of the parties."  *Id.* ¶ 16

---

[4]  The court also ruled on the parties' other claims, but those rulings are not addressed in this appeal.

6

(quotation marks omitted). Where, as in this case, "a deed distinctly refers to a plan, the plan is incorporated into the deed by reference" and "interpreted pursuant to the same rules that govern the construction of the deed." *Gravison v. Fisher*, 2016 ME 35, ¶ 38, 134 A.3d 857, *abrogated on other grounds by Dupuis v. Ellingwood*, 2017 ME 132, ¶ 9 n.4, 166 A.3d 112.

[¶11]  Because there is no language in the relevant deeds granting the Hill Family an express easement for recreational use of any of Sea Wall Beach, the issue is whether an easement was created by implication.  *See LeMay v. Anderson*, 397 A.2d 984, 987 (Me. 1979) ("An easement over conveyed property, although not expressly reserved, may nevertheless be impliedly created . . . .").

[¶12]  In *Arnold v. Boulay*, 147 Me. 116, 83 A.2d 574 (1951), we recognized that an easement to access and use land in a subdivision may be created by implication.  We explained:

> Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares, *or in other modes of a general nature calculated to give additional value to the lots delineated thereon,* and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portions so devoted to the common advantage otherwise than in the manner indicated.

*Id.* at 121, 83 A.2d at 577 (quoting *Lennig v. Ocean City Ass'n*, 7 A. 491, 493 (N.J. 1886)) (emphasis added). In *Arnold*, the developer created "a summer cottage development on the northwesterly shore of Tacoma Lake." *Arnold*, 147 Me. at 117, 83 A.2d at 575. The plan for the development showed an eighty-foot-wide area, designated as "Lake Shore Road," running between the lots and the lake. *Id.* No road was ever built there; rather, it had remained an open area. *Id.* at 118-19, 83 A.2d at 575-576. In confirming that the lot owners had a right to use the area for access to and use of the lake, we said:

> The right to use of the shore, and to have the area open for the purposes customarily made of such property, necessarily would be of great value to the lot owners. In planning the development, the owner must have weighed an expected increase in value of the lots in general from an open strip along the shore against loss from inability to sell lots bounded by the lake, and concluded that on balance it was more advantageous to set aside "Lake Shore Road" for the purposes indicated.

*Id.* at 119–20, 83 A.2d at 576.

[¶13] Here, the court found that the Hill Family and their guests regularly used the beach and that until the Tappens objected, their recreational "activities ranged far and wide over the beach in both directions."[5] The subdivision plans included "Beach" in the names for the development and

---

[5] The court further found that the use was not adverse to the interests of the prior owners of the beach, consistent with an implied easement.

8

showed an area labeled as "Sea Wall Beach." The waterfront lots are depicted as bounded by the beach, leaving a strip of beach not included in any of the original lots.[6] The subdivision plans depict a network of roads connecting the inland lots to Sea Wall Beach. The court reviewed the plan and, consistent with *Arnold*, found that

> [t]he clear intent of the Developer was to develop a set of vacation homes in close proximity to the "Seawall Beach" . . . . The Plan's road network is clearly designed to provide all residents with access to the beach.

Although the Tappens argue that there is no evidence in the record that the developer intended to dedicate Sea Wall Beach as a space for recreation by the owners and invitees of the other lots involved in this case, the court's findings regarding the historical use of the beach are not clearly erroneous, and the plan itself amply supports the court's conclusion with respect to the developer's intent.

## B.    Location of the Boundary

[¶14]  The trial court's "[d]etermination of where the boundary lies on the surface of the earth is a question of fact that we review for clear error." *Carter v. Voncannon*, 2024 ME 65, ¶ 20, 327 A.3d 9 (quotation marks omitted).

---

[6]  As discussed above, a 2021 release deed transferred to the Tappens the beach area between lots 208 and 77 that was unnumbered and unallocated in the 1893 and 1922 subdivision plans.

"In an action to establish a boundary line, the party asserting a specific location of such a line bears the burden of presenting credible evidence to establish that location." *Markley v. Semle*, 1998 ME 145, ¶ 5, 713 A.2d 945 (quotation marks omitted). Here, the parties each asserted their own theory on the location of the boundary line. Both parties therefore bore the burden of proving that their theories were correct. The court concluded that neither party presented sufficient evidence to prove the location of the boundary.

[¶15] The southern boundary of lot 205 is the northern boundary of Sea Wall Beach, as that label was used in the plans. The court found that the location of the line between the dry sand and the sand dunes has fluctuated over time, as has the location of the high-water mark. The location of the original 1893 boundary was not identified in the deeds.[7] The maps are imprecise and do not specify what area Sea Wall Beach encompasses. The court found it unclear whether the developer intended that Sea Wall Beach include a portion of the sand dunes, only include the dry sand and wet sand areas, or

---

[7] Under the standard rules of deed construction, "boundaries are controlled, in descending order of priority, by monuments, courses, distances and quantity." *Kinderhaus N. LLC v. Nicolas*, 2024 ME 34, ¶ 25, 314 A.3d 300 (quotation marks omitted). None of those descriptors is in any of the deeds, and there is no indication that lot 205 is bounded by the intertidal zone or by the water. *See Mabee v. Nordic Aquafarms Inc.,* 2023 ME 15, ¶¶ 27-28, 290 A.3d 79 (noting that "the owner of upland oceanfront property presumptively owns to the low-water mark," but that the "owner benefits from this presumption only when the grant of property expressly includes a call to the water"); *see also Almeder,* 2019 ME 151, ¶ 37, 217 A.3d 1111.

merely include the intertidal zone. The court thus did not clearly err in concluding that there is insufficient evidence to locate the northern boundary of the Sea Wall Beach portion of the Tappens' property, and the evidence does not compel a different result. *See id.* ¶ 20 (affirming the trial court's decision not to locate a boundary line when there was insufficient evidence to locate such boundary). We therefore affirm.

The entry is:

Judgment affirmed.

---

Glenn Israel, Esq. (orally), and David A. Soley, Esq., Bernstein Shur, Portland, for appellants Richard G. Tappen, Sheila M. Tappen, and Tapco, LLC

Benjamin E. Ford, Esq. (orally), and Michael J. Skolnick, Esq., Archipelago, Portland, for appellees Clark T. Hill, Meredith A. Inocencio, Richard S. Hill, Dianna S. Kilgallen, Brian Kilgallen, and Hill Family Cottage Corp.

Business and Consumer Docket docket number REA-2022-10
FOR CLERK REFERENCE ONLY