Berge v. State, No. 342-6-02 Wncv (Toor, J., Sept. 29, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| DAVID BERGE,<br>  Plaintiff<br><br> v.<br><br>STATE OF VERMONT,<br>  Defendant | SUPERIOR COURT<br>Docket No. 342-6-02 Wncv |

RULING ON MOTION FOR SUMMARY JUDGMENT

This case is brought by a landowner in Warren's Gore who claims an easement over adjoining lands of the State. The State has filed a motion for summary judgment. Oral argument took place on September 14.

Findings of Fact

The court finds the following facts to be undisputed based upon the parties' filings and counsel's representations at oral argument. The plaintiff, Berge, purchased land ("the Property") on the west shore of Norton Pond in Warren's Gore in 1997. At the time of the purchase, the land was undeveloped. He has since built a camp or home on the property.[1] He can access the

---

[1] It is somewhat unclear whether he uses the structure as a seasonal camp or as a residence. The court does not find this distinction to be significant for purposes of this motion.

property by boat across Norton Pond. There is a fishing access and parking area on the opposite shore of the pond.

Berge's property abuts on one side land owned by the State: the William Sladyk Wildlife Management Area (the "WMA"). Berge claims an easement over a portion of a road through the WMA. The original complaint alleged that the easement "runs over Hurricane Road and southeasterly from Hurricane Road to and beyond the Property." Complaint ¶ 4 (Filed June 11, 2002). Berge has now amended the complaint to say, more generally, that the easement "runs over and encumbers state owned land known as the William Sladyk Wildlife Management Area." Amended and Restated Complaint, ¶ 3 (Filed Sept. 19, 2005).[2]

Both the Property and the WMA were originally owned by Florence Davis. She conveyed the relevant portion of the WMA to the State in 1959. At that time, she kept title to 38 acres on the pond, which she later conveyed in 1961 to Berge's predecessors in interest, George McDonald and Bruce Washburn. The deed to the State contained no reference to any easements for roads to access the 38 acres.[3] When Davis conveyed the 38 acres to McDonald and Washburn, the deed to them also mentioned no easements across the State's land.

The 38 acres were later subdivided. In 1966, MacDonald and Washburn sold to Arthur and Marie Sage the two lots that are now owned by Berge. The deed to the Sages reserved a right of way for McDonald and Washburn over the two lots being sold, and granted the purchasers a right of way over adjoining lots and "over the roadway as it now exists, or as it may

---

[2] The court hereby grants the motion to amend the complaint.

[3] The deed to the State did retain for Davis the right to "construct and maintain roads" for the sole purpose of removing timber and mineral products. Exhibit E to Raboin Affidavit. This was necessary because Davis retained the right to harvest timber and minerals from the land she conveyed to the State. Those rights have since been conveyed first to MacDonald and Washburn, then to a timber company, and finally to the State. Berge does not argue that the deed provisions regarding timber and mineral access are relevant here.

hereafter be constructed, or reconstructed." Exhibit G to Raboin Affidavit. No specific road was identified in the deed.

Berge purchased his two lots ("the Property") in 1997.The deed by which Berge obtained the land provided expressly for rights of way over other privately-owned lots that are part of the 38 acres. The deed contained the same language referred to above conveying a right of way "over the roadway as it now exists." Exhibit I to Raboin Affidavit. Again, no specific road was identified.

Conclusions of Law

The State argues that Berge cannot establish (a) that he has a deeded right to use the State's road, (b) that he has a way by necessity over the road, or (c) that the Secretary of the Agency of Natural Resources has authorized the easement. The State made additional arguments in the motion for summary judgment, which have been conceded by Berge and thus are not addressed here.

1.  Deeded Access

There are numerous deeds in the record of this case. Berge argues that the reference to a "road as it now exists" in his 1997 deed refers to the road over which he seeks an easement. However, a review of the prior chain of title demonstrates that no such right of way was retained by Florence Davis when she kept the 38 acre parcel and sold the surrounding land to the State, and likewise no such right of way was transferred by Davis when she sold the 38 acres to McDonald and Washburn. Later deeds clearly cannot create a new right of way over lands of another party. *Cf.* Okemo Mountain, Inc. v. Town of Ludlow, 171 Vt. 201, 205 (2000). (one can "reserve by deed only rights that he held at the time").The court therefore concludes that Berge has no deeded right of way over the State land.

## 2. Easement by Necessity

The second theory the court must address in this case is that of an "easement by necessity." An easement by necessity can be created when the severance of a parcel of land creates a landlocked parcel – one without access from a public road. Myers v. LaCasse, 2003 VT 86A, ¶ 16, 176 Vt. 29, 36 (2003); Traders, Inc. v. Bartholomew, 142 Vt. 486, 491 (1983).[4]

Berge argues that an easement by necessity was created in his favor when Florence Davis transferred the WMA to the State in 1959, because she failed to reserve in the deed any road access to the 38 acres she retained. While the State agrees with these facts, they argue that no easement by necessity was created here because there was water access to the 38 acres (as there still is today).

Berge cites the Restatement of Property for the proposition that "[a]ccess by water, while adequate at one time, is generally not sufficient to make reasonably effective use of property today." RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.15 (2000). Berge also cites an annotation on the topic which gingerly offers the view that "[t]he 'trend,' if it may be so-called, toward a more liberal attitude in allowing easements despite access by water, might ... be explained as a tacit recognition of the fact that most people today think in terms of 'driving,' rather than 'rowing,' to work, home, or market." E.L. Kellett, Annotation, *Easements: Way By Necessity Where Property Is Accessible By Navigable Water*, 9 ALR 3d 600 (1966).

Even assuming, arguendo, the accuracy of such propositions, they are not particularly helpful to the court's analysis. If Florence Davis were transferring her property to the State today, the propositions might be relevant. The first question before the court, however, is

---

[4] As another court has noted, "[f]ew things are as certain as death, taxes and the legal entanglement that follows the sale of landlocked real estate." Bob Daniels & Sons v. Weaver, 681 P.2d 1010, 1013 (Idaho Ct. App. 1984).

whether an easement by necessity was *created in 1959* when the 38 acre parcel became landlocked. Jackson v. Nash, 866 P.2d 262, 269 (Nev. 1993) (both present necessity and "necessity at the time of severance" must be shown); Pugh v. Cook, 735 P.2d 856, 858 (Ariz. App. 1987) (where necessity did not exist at time of relevant conveyance, "no implied easement can be imposed"); Blackwell v. Mayes County Utility Services Authority, 571 P.2d 435, 436 (Okla. 1977) (necessity must exist at time of severance and cannot arise later). Thus, later shifts in the application of the doctrine based on changing societal patterns are not directly relevant.[5]

There appear to be no Vermont cases on point. Berge cites one case that did find an easement by necessity for a parcel on the shores of Lake Champlain. Clark v. Acqua Terra Corp., 133 Vt. 54 (1974). However, although the court mentioned the fact that the only access would be by water if an easement by necessity were not recognized, it offered no discussion or analysis of the issue. Id. at 55-56. It appears that the issue was never raised by the parties, and thus the court never addressed whether water access can defeat an easement by necessity. The case is therefore of little assistance here.

The court finds persuasive cases from other jurisdictions holding that water access defeats an easement for necessity. As the Maine Supreme Court has explained:

> Land abutting navigable water is generally not entitled to an easement by necessity over neighboring land. . . . This is so because navigable water is considered a public highway, and therefore, land accessible by navigable water cannot be landlocked. . . . Land abutting navigable water is not entitled to an easement by necessity simply because water access to the parcel is inconvenient.

Murch v. Nash, 2004 ME 139 ¶ 20, 861 A.2d 645, 652 (Maine 2004)(citations omitted). *See also* Estate of Thompson v. Wade, 499 N.Y.S. 2d 541, (N.Y. App. Div. 4th Dept. 1986) ("An

---

[5] Nor is it relevant whether Berge makes different use of the property today than did Florence Davis in 1959, thereby changing the type or frequency of access that he seeks.

easement by necessity cannot arise when access is available through a publicly used waterway.").

This is consistent with Vermont law, which makes clear that "necessity" is the operative term in the doctrine: "It is clear that mere inconvenience, however great, will not be sufficient. It is necessity, and not convenience, that gives the right." Dee v. King, 73 Vt. 375, 378 (1901). Thus, an easement by necessity cannot be created merely because water access is not as desirable as the road access that is sought.

An easement by necessity might still be established if a landowner proved that although the property has water access, the access is useless. *Compare* A.S.D. Securities v. J.H. Bellows Co., 192 N.E. 472, (Ohio Ct. App. 1933) (way of necessity established by evidence that pond dries up frequently so that boat access is impossible, yet wet condition of bottom of pond "not fit for travel" by other means), *with* Amodeo v. Francis, 681 A.2d 462, 466 (Me. 1996) (noting that although the coastline was a steep bank above a ledge, no evidence had been offered to show that a dock or wharf could not be built, and concluding: "It is a venerable rule that no easement by necessity may be determined to exist benefiting a water-bounded and otherwise landlocked property absent evidence that access via the boundary water *is unavailable*.")(emphasis added). However, no such evidence has been proffered here.

Foe these reasons, the court concludes that Berge has no easement by necessity over the State lands.

### 3. Approval by the Secretary

The State argues that there could be no easement over State lands without approval by the Secretary of the Agency of Natural Resources, citing a statute authorizing the Secretary to sell,

lease or exchange state lands. 10 V.S.A. § 4147. Because the court is disposing of the case on other grounds, it need not reach this argument.

4. The Amended Complaint

In his response to the motion for summary judgment, and in his amended complaint, Berge adds a claim that was not asserted in the original complaint. The claim essentially changes the location of the road over which he asserts an easement, and in support of that claim he has submitted various documents purportedly showing that Florence Davis had deeded rights of way to the public highway prior to the time that she sold the land to the State. However, even assuming these facts were proved, they prove only that she had such access prior to selling her land. They do not change the undisputed fact that when she transferred the bulk of her land to the State, she did not retain any rights of way for herself over roads on that land. Berge himself admits this is all that he can show:

> These 11 deeds show that Florence Davis had four deeded rights of way to Holland's public highways, ... When she sold the WMA to the State, she landlocked the retained Norton Pond Parcel.

Plaintiff's Supplemental Memorandum of Law, p. 5 (Filed Sept. 7, 2005). Because the court has concluded above that the creation of the landlocked parcel did not create a way of necessity here, the new argument fails for the same reason.

Order

For the foregoing reason, the State's motion for summary judgment is granted.

Dated at Montpelier this 29th day of September, 2005.

_____

7

Helen M. Toor
Superior Court Judge