# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0857

_____

FILED

June 14, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TIMOTHY J. GREGORY and
JANICE L. GREGORY,
Plaintiffs Below, Petitioners,

v.

JACK O. LONG and
LORA A. LONG,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Upshur County
The Honorable Jacob E. Reger, Judge
Civil Action No. 17-C-128

REVERSED AND REMANDED

_____

Submitted: January 26, 2022
Filed: June 14, 2022

J. Burton Hunter, III, Esq.                    Pat A. Nichols, Esq.
J. Burton Hunter, III and Associates,          Nichols & Nichols
PLLC                                           Parsons, West Virginia
Buckhannon, West Virginia                      Counsel for the Respondents
Counsel for the Petitioners


CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE BUNN did not participate in the decision of the Court.

**SYLLABUS BY THE COURT**

An ancient document or data compilation may be authenticated by a litigant showing that the item: (1) is in a condition that creates no suspicion about its authenticity; (2) was found in a place where, if authentic, it would likely be; and (3) is at least twenty years old when it is offered into evidence. W. Va. R. Evid. Rule 901(b)(8). Once these three conditions are met, statements in the ancient document or data compilation are not excluded by the rule against hearsay. W. Va. R. Evid. Rule 803(16).

**HUTCHISON, Chief Justice**:

In this appeal from the Circuit Court of Upshur County, we consider whether a 1905 map was admissible to prove a part of the plaintiffs' claim that they have a legal right to use a roadway that traverses land owned by the defendants. The circuit court found that the map was not admissible and then, in the absence of any evidence supporting that part of the plaintiffs' claim, granted partial summary judgment to the defendants.

As we discuss below, we find that the 1905 map was admissible as an "ancient document." Further, the map created genuine issues of material fact. Accordingly, we reverse the circuit court's partial summary judgment ruling and remand the case for further proceedings.

## I. Factual and Procedural Background

Plaintiffs Timothy and Janice Gregory own a house on 152 acres of land in Upshur County. The record suggests that there is valuable timber on the land.

Next to the plaintiffs' property, defendants Jack and Lora Long own a house on 50 acres of land. There is a roadway that stretches about 1,155 feet across the defendants' land. The roadway leads from a public highway to the plaintiffs' land, and the parties agree that the plaintiffs have a legal right use to use the roadway. They disagree, however, about the right of way's legal width and the circumstances under which the plaintiffs may use it.

1

In April of 2017, a dump truck filled with gravel began traveling up the roadway to, ostensibly, fill in some potholes in front of the plaintiffs' house. The defendants, however, blocked the dump truck. They perceived that the plaintiffs were setting the stage to timber their land and were attempting to repair, straighten and widen the roadway in anticipation of the unwieldy logging trucks needed to complete the logging operation. The defendants objected to any acts that might widen or straighten the roadway into the defendants' ditches, fences, flowers, and trees.

The plaintiffs sued the defendants in December of 2017 seeking, among other things, a declaratory judgment to clarify the existence, location, width, and scope of their permissible use of the right of way across the defendants' land. The defendants responded with a motion for summary judgment asserting that the plaintiffs legally have a prescriptive easement[1] to use the roadway, that the easement is only about ten to twelve feet wide, and that the plaintiffs are limited to using the easement for ingress to and egress from their house, as well as for occasional agricultural use. The circuit court denied the motion because the record showed that disputed questions of material fact existed regarding the width, location, and scope of use of the right of way.

---

[1] "An easement is a right that one person has to use the land of another person, for a specific purpose." *Cobb v. Daugherty*, 225 W.Va. 435, 441, 693 S.E.2d 800, 806 (2010). "A prescriptive easement arises through the adverse use of another person's land." *O'Dell v. Stegall*, 226 W. Va. 590, 605, 703 S.E.2d 561, 576 (2010).

Plaintiffs' counsel concedes in his brief to this Court that, when he filed this lawsuit in the Circuit Court of Upshur County, he had no proof showing how the plaintiffs' right-of-way across the defendants' land was created. As counsel states, his only evidence was that the right "has existed longer than human memory." Plaintiffs' counsel then relates that a conversation about the roadway in December 2018 prompted him to visit the regional West Virginia Division of Highways office, a local historian, and numerous other individuals, all of which led him to discover a key piece of evidence: a 1905 map hanging in the hallway of the Upshur County Courthouse.[2] The plaintiffs allege the map shows that the roadway traversing the defendants' property is an ancient, public, county road.

A caption in the upper left corner of the map provides that it is a "Map of Upshur County, West Va." showing, among other things, "county roads." In the lower left corner is the following inscription:

MADE BY
A. B. BROOKS, BUCKHANNON, W. VA.
1905
THE ORIGINAL OF THIS MAP WAS MADE FOR THE COUNTY
COURT[3] UNDER THE DIRECTION OF EUGENE BROWN, CLERK

---

[2] The plaintiffs' counsel asserts that there are *two* copies of the map "framed and mounted in the central hallway of the Upshur County Courthouse." For simplicity, we refer to the map in the singular, since the record suggests the copies are otherwise identical.

[3] In West Virginia, a "county court" is now called a "county commission." *See* W. Va. Const., Art. IX, § 9 (1974) ("The office of county court . . . shall be designated as the county commission and wherever in this constitution, the code of West Virginia, acts of the Legislature or elsewhere in law a reference is made to the county court of any county, such reference shall be read, construed and understood to mean the county commission.")

The plaintiffs' counsel did more research and found a 1905 local newspaper story discussing the creation of the map by Mr. Brooks, an assistant in the county clerk's office:

**Making Map of County**

A. B. Brooks, of the county clerk's office, is making a fine and accurate map of Upshur county. Every stream and road, with its windings, is placed exactly, and the location of each farm house, with the name of the occupant, is neatly marked on the map. The work will be completed in a few more weeks, and will be a great convenience to the people of the county. Mr. Brooks has worked hard for several months, and the map is one of the best we have ever seen. He intends to have it printed, so that those wanting copies can secure them.

*The Buckhannon Delta and Knight-Errant* at 1 (June 29, 1905). The plaintiffs' counsel also secured an affidavit from the current county clerk stating that she has worked at the courthouse for twenty-one years. The county clerk said she regularly refers to the 1905 map hanging in the hallway to identify county landmarks and refers visitors to the map for the same reason.

The plaintiffs filed amended complaints based upon the "1905 Map drawn by A. B. Brooks" seeking, in part, a declaration that the disputed roadway is a public or county road. They alleged that the 1905 map contains important landmarks, such as a church that still stands next to the defendants' land, and the long-gone house of one "Geo. Hamner," a former owner of one part of the plaintiffs' land.[4] The plaintiffs asserted that the 1905 map has markings consistent with the roadway across the defendants' property

---

[4] The record indicates that, in 1905, George T. Hamner and others owned a 40-acre tract that is now encompassed by the plaintiffs' 152-acre property.

and identifies the roadway as a "county road."  The plaintiffs averred that various state laws from the late 1800s and early 1900s required county roads to "occupy a right of way not less than thirty feet wide[.]" *See, e.g., Acts of the Legislature*, ch. 52, § 2, at 402 (1909).

To explain the meaning of the 1905 map, the plaintiffs proffered an expert opinion from John W. Fisher, II, who taught property law at the West Virginia University College of Law for 41 years.  Dean Fisher opined that the county road system[5] in West Virginia evolved from trails originally created by wildlife, Native Americans, or early settlers.  By the late 1800s, counties legally conscripted men between the ages of 18 and 50, for two days a year, to improve those trails into county roads.[6]  Because of this system

---

[5] In 1933, at the height of the Great Depression, the Legislature adopted legislation requiring what is now the State Division of Highways to "take over the county-district roads" and "assume charge of their further construction, reconstruction and maintenance as a part of the state road system." *State ex rel. Cnty. Ct. of Wood Cnty. v. State Rd. Comm'n*, 147 W. Va. 623, 626, 129 S.E.2d 726, 729 (1963) (quoting W. Va. Code § 17-4-2 (1933)).  *But see* W. Va. Code § 17-10-1 (1933) (requiring county commissions to maintain "bridges situated within municipalities" that have not been transferred to the State's control).  There is nothing in the record showing that Upshur County transferred, or that the State assumed charge of, the disputed roadway.

[6] Regarding this system of conscription, West Virginia law provided:

Every able-bodied male person not under eighteen nor over fifty years of age, residing in any road precinct, and who is not a pauper, having had at least three days' notice, shall, between the first day of April and the first day of September in each year, attend in person or by a sufficient substitute, acceptable to the surveyor of roads, with proper tools, and work on the county roads in such precinct, under the direction of the surveyor thereof, at such places and on such days during such period, as said surveyor may appoint, two days.

Continued . . .

of forced labor, Dean Fisher stated that it was typical for there to be no record of money being spent on county roads.

Significantly, Dean Fisher found that the 1905 map was "compelling evidence" of the county roads in Upshur County given that the map "was commissioned by the Upshur County Court, was prepared by an assistant County Clerk and posted by the Clerk's office and has been publicly displayed until this day." Additionally, he identified various Virginia and West Virginia statutes from the late 1800s indicating that county roads should be constructed 30 feet wide, sufficient for wagons to pass going in opposite directions. Based, in part, on the 1905 map, it was Dean Fisher's overall opinion that the evidence clearly established that the roadway traversing the defendants' land was, and still is, a county road and, by law, should have a right-of-way that is thirty feet wide.

The defendants subsequently moved for partial summary judgment to dismiss that part of the plaintiffs' case asserting that the roadway is a public or county road.[7] The defendants argued that the plaintiffs produced no deeds, orders, or other

---

*Acts of the Legislature*, ch. 87, § 12, at 120 (1877). *See also* John F. Kelly, *The Revised Statutes of West Virginia*, Chapter 171, § 12, at 974 (1879).

[7] The defendants' motion is styled as a "Motion to Dismiss" one of several causes of action alleged by the plaintiffs. However, because the defendants based their motion on evidence in the record, the circuit court properly considered the motion to be one for partial summary judgment. *See* W. Va. R. Civ. Pro. Rule 12(b)(7) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]").

6

evidence showing the roadway was ever constructed or condemned by, or dedicated or deeded over to, the Upshur County Commission. Further, the defendants asserted there is no evidence in the record that public money was ever spent on the roadway.

In an order dated July 10, 2020, the circuit court agreed with the defendants and granted partial summary judgment in their favor. The circuit court determined that it could not consider the 1905 map because it "is not a public record." After excluding the map from consideration, the circuit court found that "there is no evidence to support a claim entitling [the plaintiffs] to a declaration that the road is or has ever been a public road or public right-of-way." Accordingly, the circuit court dismissed the "Plaintiffs' claim for declaration of public road or public right-of-way on the road traversing the Defendants' property[.]" The circuit court later declared the order to be final and appealable.[8]

The plaintiffs now appeal the circuit court's partial summary judgment order.

## II. Standard of Review

We review a circuit court's entry of summary judgment de novo. Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). We therefore apply the same standard as the circuit court, which is that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry

---

[8] In a separate order, the circuit court set the case for trial on the various other questions raised by the parties' pleadings which are not pertinent to this appeal.

7

concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

### III. Discussion

The plaintiffs' central argument on appeal is that the circuit court erred when it refused to consider or admit the 1905 map.[9] The plaintiffs point out that the map should be considered as an "ancient document" admissible under Rule 803(16) of the West Virginia Rules of Evidence. The plaintiffs contend that, after declaring that the 1905 map was not admissible evidence, the circuit court then erred in granting the defendants' motion for summary judgment.[10] We agree.

We begin by noting that "[a] trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion." *W. Va. Dep't of Transp., Div. of Highways v. Newton*, 235 W. Va. 267, 277, 773 S.E.2d 371, 381 (2015). Hence, we must weigh whether the circuit court abused its discretion in refusing to consider the 1905 map.

---

[9] The plaintiffs also argue on appeal that the circuit court erred in excluding Dean Fisher's expert opinion based on the 1905 map. However, we find no ruling excluding Dean Fisher's testimony in the circuit court's order. Accordingly, we decline to consider this argument.

[10] The plaintiffs note that they, too, filed a motion for summary judgment and assert that the circuit court erred in not granting summary judgment in their favor. However, because genuine issues of material fact regarding the nature, width, location, and permissible use of the right of way are clearly evident in the record, we decline to consider the plaintiffs' argument.

The gist of the defendants' argument on appeal seems to be that the map is inadmissible under our hearsay rules. The 1905 map meets the basic definition of hearsay: it is a "written assertion" of certain facts that are being "offer[ed] in evidence to prove the truth of the matter asserted" in the writing, without the author of the writing (A. B. Brooks) being available to testify. *See* W. Va. R. Evid. Rule 801(a) and (c). "Hearsay is presumptively untrustworthy because the out-of-court declarant cannot be cross-examined immediately as to any inaccuracy or ambiguity in his or her statement." Glen Weissenberger, *Hearsay Puzzles: An Essay on Federal Evidence Rule 803(3)*, 64 Temp. L. Rev. 145 (1991). The defendants point out that the plaintiffs have been unable to substantiate how or why A. B. Brooks identified the roadway as a county road, and they assert the plaintiffs have offered no documents – other than the map itself – suggesting the roadway was a county road. Further, the defendants categorize Dean Fisher's opinion (which is founded on the map) that the roadway has always been a public road as nothing more than a "theory" based on "conjecture," "a great story with no evidence[.]"

Hearsay is generally, but not always, inadmissible. Rule 802 makes clear that "[h]earsay is not admissible *except as provided by these rules*." (Emphasis added). Rule 803(8) creates such an exception, in that it provides that "public records" are not excluded by the rule against hearsay.[11] The defendants, in effect, argue that the 1905 map

---

[11] Rule 803(8) of the West Virginia Rules of Evidence provides:

Continued . . .

9

does not meet the definition of a "public record" in Rule 803(8), and it was therefore inadmissible hearsay. As the defendants insist in their brief, because it is "not a public document," the circuit court could "attribute no weight to the map[.]"

We reject the defendants' position because there is a separate rule of evidence which provides that the map *is* admissible, despite being hearsay: the ancient document rule. The ancient document rule is contained within two rules of evidence: Rule 803(16) and Rule 901(b)(8). Rule 803(16) establishes that an assertion of fact in an ancient document, that is, "[a] statement in a document that is at least 20 years old and whose authenticity is established," may not be excluded as inadmissible hearsay. Hence, Rule

---

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

. . .

(8) Public Records. A record or statement of a public office if:

(A) it sets out:

    (i) the office's activities;

    (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

    (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) neither the source of information nor other circumstances indicate a lack of trustworthiness

10

803(16) requires that before an ancient document may be admitted, the proponent must meet two factors.

First, to qualify as an ancient document under Rule 803(16), the party offering the evidence must establish the document containing the hearsay statement is at least twenty years old. This factor is met, given that the evidence of record would support a finding that the map in question is over a century old.

Second, Rule 803(16) requires the proponent to establish the ancient document's "authenticity." Questions of authenticity are governed by Rule 901(a) which provides that, as a general rule, a party must "authenticate" documents or items before they can be admitted. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." W. Va. R. Evid. 901(a). Authentication is usually done by a witness familiar with the item who can give "[t]estimony that an item is what it is claimed to be." W. Va. R. Evid. 901(b)(1).

However, "[a] writing that has been in existence for a number of years will frequently be difficult to authenticate by a percipient witness." Robert P. Mosteller, 2 *McCormick on Evid*. § 225 (8th ed. 2020). To combat this authentication problem, Rule 901(b)(8) accords ancient documents and data compilations a special standard of proof to show that the item is what the proponent claims it is. To properly authenticate an ancient document or data compilation, a litigant must only show that the item "(A) is in a condition

that creates no suspicion about its authenticity;[12] (B) was in a place where, if authentic, it would likely be;[13] and (C) is at least 20 years old when offered." W. Va. R. Evid. Rule 901(b)(8) (footnotes added). It has been explained that:

> [t]he primary justification for the ancient document rule is one of necessity; if genuine documents are not to be excluded merely because the passage of time has clouded memories or allowed authenticating witnesses to disappear or die, an ancient document rule is necessary. The rule is further justified on the basis of trustworthiness. It is argued that, as the length of time increases between the day the document was created and the date of trial, the possibility decreases that the document was

---

[12] We once said that the first consideration under Rule 803(16) (and, implicitly, Rule 901(b)(8)) is "the qualification that the document itself or its contents not be suspicious with regard to its genuineness and reliability." Syl. pt. 6, in part, *Moore v. Goode*, 180 W. Va. 78, 375 S.E.2d 549 (1988). In *Moore*, a woman claimed she was a decedent's half-sister and, thus, a beneficiary under the decedent's will. As proof, the woman offered a 1938 document, found in the decedent's papers after his 1982 death, that she alleged was the settlement of a paternity suit establishing she shared a father with the decedent. *Id.* at 86, 375 S.E.2d at 557. However, we found the document's "authenticity raise[d] suspicions" and we "decline[d] to accept it as within the ancient document hearsay exception." *Id.* at 87, 375 S.E.2d at 558. We note, however, that while our ruling cited the ancient documents rule, our discussion of the document focused more on the document's lack of probative effect, namely that the purported father never expressly accepted paternity for the woman in the document. The father simply agreed to pay $50 to end the suit. *Id. See also*, Stephen E. Arthur, Robert S. Hunter, *Federal Trial Handbook: Civil* § 60:24 (2021-2022 Edition) ("Although [Fed. R. Evid. Rule 803(16)] requires that the document be free of suspicion, that suspicion does not go to the content of the document but rather to whether the document is what it purports to be. Questions as to the document's content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity.").

[13] *See Federal Trial Handbook: Civil* at § 60:24 ("It is not necessary to show a chain of custody for ancient documents. Fed. R. Evid. 901(b)(8) merely requires that the document be found in a place, if authentic, it likely should be." (Citing *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986) (admitting as an ancient document an identification card showing defendant was a Nazi SS guard at Treblinka labor camp in 1943-44, despite the document being found in the Soviet Union's archive of captured German SS documents))).

> prepared with litigation in mind. A third reason advanced for allowing the authentication of documents on the basis of their antiquity is that of probable genuineness; an unsuspicious-looking document which is found in a place where it should have been found, and shown to be sufficiently old, is probably genuine.

Mitchell L. Posin, *Ancient Documents*, 50 Am. Jur. Proof of Facts 2d 321, § 1 (1988). "The term 'ancient document' generally encompasses written items such as wills, deeds, contracts, newspapers, publications, letters, office memoranda, ledger books, scientific reports, inscriptions, and the like[.]" 29A Am. Jur. 2d *Evidence* § 1164 (2022).

This Court has found the ancient documents rule critical to the consideration of old deeds in a courtroom. Before the adoption of the twenty-year requirement in the West Virginia Rules of Evidence, the common-law rule for ancient documents required an unsuspicious-looking deed or other writing to be found in a place where it should have been found, and to be at least thirty years old.[14] "If these deeds were of modern origin, it would be necessary, as against strangers, to produce such evidence [of authenticity like testimony by witnesses]. But such is not the law as to ancient deeds upwards of 30 years old, where possession has been continuously held thereunder." *Wilson v. Braden*, 56 W. Va. 372, 49 S.E. 409, 410 (1904) (Cleaned up). Courts permit the admissibility of old

---

[14] "There is little question that, whatever its common law status, the ancient documents exception has been broadened under our Rules of Evidence." *Moore*, 180 W. Va. at 87, 375 S.E.2d at 558. Moreover, today, Rule 803(15) specifically addresses the admissibility of hearsay statements in deeds or other documents that affect an interest in property. *See McGuire v. Walker*, 188 W. Va. 214, 423 S.E.2d 617 (1992) (discussing Rule 803(15)).

deeds "on the theory that, if the recitals were untrue, they would have long since been disproved, and time and possession has raised the presumption of their truth, admissible even against strangers." *Id. See also Titchenell v. Titchenell*, 74 W. Va. 237, 81 S.E. 978, 979-80 (1914) (permitting introduction of an 1874 deed because "[t]he deed is an ancient one, produced by the proper custodian . . . found . . . where the deed executed by the plaintiffs would naturally have been left . . . and bears every appearance of genuineness."). We have also determined that ancient letters, in excess of forty years old, written by a middle-aged mother to her daughter and preserved "as heirlooms, tender remembrances, or sacred relics" by her grandchildren, could be used as proof of the mother's signature on disputed trust documents. *Johnston v. Bee*, 84 W. Va. 532, 100 S.E. 486, 489 (1919).

While this Court has never considered the question of a map as an ancient document, other courts have found old maps to be admissible proof. For instance, the Georgia Supreme Court found that "[a]n ancient map of the public roads of a county, purporting to have been made by authority, and coming from the proper custody, is competent evidence to show the existence and location of the public roads of the county at the time it was made[.]" *Bunger v. Grimm*, 83 S.E. 200, 201-02 (Ga. 1914). "The theory on which such ancient maps are received is that, where the matter in controversy is ancient,

and not susceptible of better evidence, traditional reputation of matters of public and general interest is competent evidence of the matters to which it relates." *Id.*[15]

We therefore hold that an ancient document or data compilation may be authenticated by a litigant showing that the item: (1) is in a condition that creates no suspicion about its authenticity; (2) was found in a place where, if authentic, it would likely be; and (3) is at least twenty years old when it is offered into evidence. W. Va. R. Evid. Rule 901(b)(8). Once these three conditions are met, statements in the ancient document

---

[15] *See also Donohue v. Whitney*, 30 N.E. 848, 850 (N.Y. 1892) ("[A] map might be receivable in evidence, as an ancient document . . . where the maker is dead and it embraces large areas of territory, to have been so generally and publicly recognized to be correct as to afford safe grounds for the presumption that the lot owners in making their conveyances had in view the boundaries and monuments indicated upon it."); *Petroman v. Anderson*, 135 A. 391, 393 (Conn. 1926) (admitting an 1854 deed and a map that recites the 1827 measurements by a surveyor, "found in the proper custody. They were ancient documents—more than 30 years old—and as such prove themselves; i.e. that they are what they purport to be."); *Perry v. Parker*, 141 A.2d 883, 884 (N.H. 1958) ("Maps, surveys, plans and plots which are thirty years old, free on their face of suspicion and found in proper custody are admissible in evidence as ancient documents as an exception to the hearsay rule."); *Walker v. Town of Fruithurst*, 130 So.2d 12, 14 (Ala. 1961) ("Maps, surveys, etc., purporting to be thirty years old or more are said to prove themselves and are admissible in evidence without the ordinary requirements as to proof of execution or handwriting if relevant to the inquiry, when produced from proper custody, on their face free from suspicion[.]"); *Howard v. Kingmont Oil Co.*, 729 S.W.2d 183, 185 (Ky. Ct. App. 1987) ("The [1907] survey falls within the 'ancient documents' exception to the hearsay rule. The document was found attached to an old deed . . . no alterations appear to have been made to the survey, and there was no evidence introduced which might cast doubt as to its authenticity."); *Murch v. Nash*, 861 A.2d 645, 651 (Me. 2004) (finding an 1887 "commercial atlas is competent historical evidence of the presence of a right-of-way on the face of the earth."); *Skelton Ranch, Inc. v. Pondera Cnty. Canal & Reservoir Co.*, 328 P.3d 644, 651 (Mont. 2014) ("reports, surveys, maps, hydraulic data, memoranda, and interview notes" "compiled in the early 1900s" were admissible as ancient documents). *See generally*, R. V. Rogers, "Admissibility in evidence of ancient maps and the like," 46 A.L.R.2d 1318 (1956).

or data compilation are not excluded by the rule against hearsay. W. Va. R. Evid. Rule 803(16).

The record before this Court suggests that the 1905 map was drafted 117 years ago. Neither party offered evidence casting suspicion that the map is not what it purports to be: a map of Upshur County landmarks including county roads. A statement on the map declares that it was drafted by A. B. Brooks, an assistant county clerk who drafted the map on behalf of the county clerk and the county commission. A contemporaneous newspaper article supports that statement. The affidavit from the current county clerk suggests that a framed copy of the map has been hanging in the halls of the courthouse, near the county clerk's office, for at least twenty-one years. And counsel for the plaintiffs contends that is where he found the 1905 map.

Hence, the plaintiffs met all three of the authentication requirements of Rule 901(b)(8): neither party produced evidence that raises a reasonable suspicion the 1905 map is not genuine; it was found in a place where one would expect to find such a map; and it is more than twenty years old. To the extent the ancient map contains written assertions of fact, Rule 803(8) provides that those hearsay assertions are admissible. We are of the opinion that the defendants' objections to the 1905 map go to the potential weight a finder of fact may afford it, if any, and not to the map's admissibility. On this record, the plaintiffs have demonstrated that the 1905 map may be admissible as an "ancient document."

Accordingly, we find that the trial court abused its discretion in refusing to admit or consider the 1905 map.[16]

Finally, having found that the circuit court erred in excluding the 1905 map from consideration, we also find that the circuit court erred in its ultimate conclusion that the plaintiffs offered no evidence to support their claim that the roadway was a county road. The 1905 map, and Dean Fisher's opinion formed in light of the map, make clear that there are genuine issues of fact that remain to be tried and inquiry concerning the facts is necessary to clarify the application of the law. Accordingly, we conclude that the circuit court erred in granting partial summary judgment to the defendants.

## IV. Conclusion

The circuit court's July 10, 2020, partial summary judgment order is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

---

[16] We note that the plaintiffs offered other old documents, such as geological survey maps from the State of West Virginia dated 1917 and 1918, as evidence of the roadway's public nature. The circuit court did not discuss this other evidence in its summary judgment ruling, so we leave it to the circuit court to assess the admissibility of this other evidence on remand.

17